**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOANN POWELL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:10-cv-2644** |
| | § | |
| **PROFILE DESIGN LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff Joann Powell's ("Plaintiff" or "Powell") Motion to Dismiss Defendant Profile Design's ("Profile") First Amended Third Party Complaint Under 12(b)(2) for Lack of Personal Jurisdiction. (Doc. No. 44.) Also pending is Third-Party Defendant HL (USA) Corporation's ("HL (USA)") Motion to Dismiss Under Rule 12(b)(2). (Doc. No. 68.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Powell's Motion to Dismiss should be denied for lack of standing and HL (USA)'s Motion to Dismiss should be granted.

## I. BACKGROUND

This is a products liability case arising from a bicycle accident. Powell claims that, while she was riding her bicycle during a training ride, the weld of the aerobar stem failed, causing her to be thrown forward over the front of the bicycle onto the pavement. She alleges that she sustained significant injuries as a result of the accident. Powell subsequently filed this lawsuit against Profile for negligence, gross negligence, negligent failure to warn, strict liability for failure to warn, breach of express warranty, breach of implied warranty, and strict liability for

manufacturing and design defects of the subject aerobar and stem. She contends that Profile was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the subject aerobar stem.

Profile appeared in this lawsuit, filed an answer, and filed a Third-Party Complaint against Hsin Lung Accessories Co. Ltd., HL Corp., HL China Corp., Kalin Development Limited, HL Corp., HL Corp. Ltd., Hsin-Tech Co. Ltd., and HL (USA) (hereinafter collectively referred to as "Third-Party Defendants"). Profile's First Amended Third-Party Complaint alleges that the relevant bicycle stem was designed and manufactured by the Third-Party Defendants. (Doc. No. 42.) Thus, Profile argues, it is entitled to contribution and indemnity from the Third-Party Defendants under Chapter 33 of the Texas Civil Practice and Remedies Code.

Powell subsequently moved to dismiss Profile's First Amended Third-Party Complaint on the grounds that the Court lacks personal jurisdiction over the Third-Party Defendants. Profile responded and argued that Powell lacked standing to raise lack of personal jurisdiction on behalf of the Third-Party Defendants under Rule 12(b)(2). Subsequently, Third-Party Defendant HL (USA) filed its own Motion to Dismiss, in which it contends that HL (USA), a California corporation, lacks sufficient contacts with Texas to justify this Court's exercise of personal jurisdiction and that such an exercise would not comport with traditional notions of fair play and substantial justice. Profile has responded to HL (USA)'s Motion to Dismiss, arguing that HL (USA) has, indeed, directed purposeful conduct toward Texas sufficient to confer personal jurisdiction.

HL (USA) is the only Third-Party Defendant that has challenged the Court's jurisdiction. The Court will first determine whether Powell has properly raised the behalf of all Third-Party

Defendants. As explained below, the Court concludes that Powell lacks standing to raise the personal jurisdiction issue on behalf of the Third-Party Defendants and, therefore, the Court will not reach the merits of Powell's Motion. The Court will then analyze whether the Court possesses personal jurisdiction over HL (USA), which has properly raised the issue in its Motion to Dismiss.

## II. LEGAL STANDARD

"Absent a rule or statute to the contrary, . . . a federal court [may] exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987). Because the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court's constitutional due process inquiry into personal jurisdiction also serves as an inquiry into personal jurisdiction under the Texas long-arm statute. *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 93-4 (5th Cir. 1992).

To comport with constitutional due process, a plaintiff must show that: (1) defendants purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that defendants could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 94 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784

(5th Cir.1990)). *See also Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."). The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citation omitted).

Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citation omitted). "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Burger King*, 471 U.S. at 474). *See also Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010) ("The 'purposeful availment' element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party."). Further, specific jurisdiction "requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378-79. Indeed, the non-resident defendant must purposefully avail herself of the privilege of conducting activities in the forum state. *Id.* at 379.

Both the plurality and the concurring opinions in the recent Supreme Court case *McIntyre Machinery, Ltd. v. Nicastro* shed light on the specific jurisdiction doctrine. In the plurality opinion, Justice Kennedy explained that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the

forum State." 131 S.Ct. 2780, 2788 (2011). The foreign manufacturer defendant in *McIntyre Machinery, Ltd.* sold its machines to a distributor who agreed to sell them in the United States, and several of those machines ended up in New Jersey, where they caused injuries. *Id.* at 2790. The defendant also attended trade shows in the United States displaying the machine, but not in New Jersey. The defendant had no office in New Jersey, did not pay taxes in New Jersey, did not own property in New Jersey, never sent employees to New Jersey, and never advertised in New Jersey. *Id.* The plurality decided, based on these facts, that the defendant did not "engage in any activities in New Jersey that reveal[ed] an intent to invoke or benefit from the protection of its laws." *Id.* at 2791. On this basis, it held, there was no personal jurisdiction over the defendant.

In a concurrence joined by Justice Alito, Justice Breyer wrote that the case could be decided on narrower grounds. He observed that "the relevant facts found by the New Jersey Supreme Court show no 'regular … flow' or 'regular course' of sales in New Jersey; and there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else." *Id.* at 2792. Nor had the plaintiffs shown a "specific effort by the British Manufacturer to sell in New Jersey." *Id.* Indeed, plaintiff's counsel "has not otherwise shown that the British Manufacturer 'purposefully avail[ed] itself of the privilege of conducting activities' within New Jersey, or that it delivered its good in the stream of commerce 'with the expectation that they will be purchased' by New Jersey users." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)).

Unlike specific jurisdiction, general jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Cent. Freight Lines, Inc.*, 322 F.3d at 381. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum."

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Supreme Court illustrated the level of ties to the forum state required to establish general jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*. In that case, the Supreme Court determined that an out-of-state company's contacts with Texas were not sufficient to establish general jurisdiction, even though the company sent its chief executive officer to Houston for a contract negotiation, received checks drawn from a Houston bank, purchased equipment from a Texas enterprise, and sent personnel to Texas for training. 466 U.S. 408, 416 (1984). The Supreme Court held that "mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 418.

The Supreme Court further illustrated the operation of the general jurisdiction test in *Goodyear Dunlop Tires Operations, S.A. et al. v. Brown*, decided this year. In that case, the Supreme Court held that there was no general jurisdiction over a non-resident tire manufacturer that did not design, manufacture, or advertise its products in the forum state, had no place of business, employees, registration, or bank accounts in the forum state, and did not solicit business or itself sell or ship tires to customers in the forum state. 131 S.Ct. 2846, 2852 (2011). The Court determined that holding the non-resident manufacturer liable under those circumstances would expand general jurisdiction so as to make "any substantial manufacturer or seller of goods … amenable to suit, on any claim for relief, wherever its products are distributed." *Id.* at 2857.

While the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, a *prima facie* showing suffices, and the plaintiffs need not establish jurisdiction by a preponderance of the evidence. *Love N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d

465, 469 (5th Cir. 2006). Moreover, "the Court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Id.* (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). "'The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

## III. ANALYSIS

As a preliminary matter, the Court must first determine whether Powell has standing to raise lack of jurisdiction on behalf of the Third-Party Defendants. It will then analyze the merits of HL (USA)'s Motion to Dismiss. Ultimately, the Court decides that Profile has not made a *prima facie* showing that the Court has personal jurisdiction over HL (USA). As the Court determines that there is no specific or general jurisdiction, it need not reach the question of whether jurisdiction in these circumstances would offend traditional notions of fair play and substantial justice.

### A. Plaintiff's Standing to Raise Lack of Personal Jurisdiction over Third-Party Defendants

"The personal jurisdiction requirement recognizes and protects an individual liberty interest." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Id.* at 703. As personal jurisdiction is an individual right that can be waived, the Court determines that Powell cannot raise it on behalf of Third-Party Defendants. *See also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Fed.Prac. & Proc. Civ. 2d § 1445 (3d ed. 2011) ("Furthermore, a lack of jurisdiction or venue

cannot be asserted by the original plaintiff as to the defendant's third-party claim."); *Tri-State Truck Ins. Ltd. v. First Nat. Bank of Wamego*, No. 09-4158-SAC, 2011 WL 3349153, at *7 (D. Kan. Aug. 3, 2011) ("A lack of personal jurisdiction can usually be raised only by the affected party."); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, No. 08–CV–676S, 2009 WL 791332, at *7 (W.D.N.Y. Mar. 23, 2009) (concluding that defendant lacks standing to contest personal jurisdiction over co-defendant); *Jenkins v. Smead Mfg. Co.*, No. 09–CV–0261–IEG (BLM), 2009 WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (deciding that defendant lacks standing to raise lack of personal jurisdiction on behalf of additional defendants named in amended complaint); *Clark v. Associates Commercial Corp.*, 149 F.R.D. 629, 634 (D. Kan. 1993) ("The court has already determined that third-party defendants have waived their personal jurisdiction defense, and plaintiff has no standing to assert this personal defense for third-party defendants.").

**B. Personal Jurisdiction over HL (USA)**

Next, the Court must determine whether HL (USA), which independently moved to dismiss under Rule 12(b)(2), is subject to this Court's jurisdiction. HL (USA) is a California corporation existing under the laws of the State of California. HL (USA) alleges that it does not maintain any telephone number, mailing address, facsimile number, warehouse, or office in Texas. It does not maintain, nor has it ever been required to maintain, a registered agent for service in Texas. HL (USA) has never been registered to do business in Texas and it has never had any ownership interest in any business based in or doing business in Texas. HL (USA) has never owned, leased, rented, or controlled any real or personal property in Texas. Additionally, HL (USA) claims that it has never sold any products directly to any Texas individual or entity, entered into any written transaction, contract, or agreement in Texas, nor has it entered into any distribution or sale agreements for products that are directed or intended to be sold in Texas. It

states that it has not solicited business in Texas or maintained a website that it utilizes for purposes of direct sales to Texas individuals or entities. In fact, with the exception of a single visit to Texas by an HL (USA) representative to inspect the bicycle made the basis of this lawsuit after HL (USA) received notice of the same, no employees, officers, agents, representatives, or servants of HL (USA) have ever visited Texas on behalf and/or at the behest of HL (USA). HL (USA) alleges that the following is also undisputed:

- HL (USA) has never maintained any agents, servants, or employees (actual or apparent) in Texas;
- HL (USA) has never solicited business from or advertised to any person or entity in Texas;
- HL (USA) has never maintained a banking, savings, or investment account in Texas;
- HL (USA) has never had any representatives in Texas who provided it with financial, tax, or legal advice;
- HL (USA) has never borrowed money from a financial institution in Texas;
- HL (USA) has never paid, or been obligated to pay, taxes in Texas;
- HL (USA) has never recruited Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas;
- HL (USA) has never engaged in tortuous conduct, and/or committed a tort (in whole or in part), in Texas;
- HL (USA) has never conducted any continuous or systematic or substantial activities in Texas;
- HL (USA) has never had any continuous or systematic or substantial contacts with Texas;

- HL (USA) has never purposely availed itself of the privilege of conducting activities in Texas such that it reasonably should have anticipated being sued in Texas by Profile, Powell, or anyone else; and/or
- HL (USA) has never had minimum contacts with Texas sufficient for a court in Texas to exercise jurisdiction over it.

In its response, Profile claims that HL (USA) is the only contact and go-between with HL China, which manufactured the stem Profile used. Profile thus concludes that HL (USA) sold the bicycle stem at issue in the case. Profile further claims that HL (USA) distributes and sells HL China products throughout the United States, and thus delivers those products, including the stem at issue, into the stream of commerce with the expectation that they will be purchased and used by consumers. Profile also states that an HL (USA) representative traveled from California to Plaintiff's home in Texas to inspect the bicycle made the basis of the lawsuit and to determine whether the product was an HL product and whether HL (USA) would respond to Plaintiff's claim. On this basis, Profile insists that specific jurisdiction exists.

Profile also asserts that general jurisdiction exists. It claims that if a distributor wants to purchase products manufactured by HL China, one of the largest manufacturers of bicycle component parts in the world, it places the order through HL (USA). For example, HL China manufactures bicycle component parts, including stems, under the brand name "ZOOM." These parts are distributed through HL (USA) only and are sold in retail shops in Texas. Therefore, HL (USA) "has continuing and systematic contacts with this forum through the sale and distribution of its own branded stems (the 'ZOOM' products) which allow for the exercise of personal jurisdiction." (Resp. to Mot. Dismiss, Doc. No. 74 at 8.) Profile further claims that exercise of jurisdiction is not unfair because HL (USA) has means of defending the case in Texas, and Texas

has a significant interest in the quality and safety of HL (USA) products. Furthermore, Profile asserts, California does not have a greater interest in the litigation, as the injury occurred in Texas, not California.

HL (USA) retorts, in its reply, that it "did not design, develop, manufacture, test, package, promote, market, label or sell the Profile bicycle stem" and thus "could not have sold the subject stem to Profile Design." (Reply to Resp. to Mot. Dismiss, Doc. No. 77 at 2.) Furthermore, HL (USA) asserts, the sale of the bicycle stem, if it had occurred, would have happened in California. Even if HL (USA) did sell the subject stem, it claims, that activity alone is not sufficient to establish personal jurisdiction absent proof that HL (USA) engaged in another activity targeting Texas. HL (USA) also argues that a single, isolated trip to the forum state, such as the inspection visit by an HL (USA) representative, does not establish specific jurisdiction. HL (USA) goes on to claim that the fact U.S. distributers and retailers could purchase bicycle parts through HL (USA) is insufficient to establish general jurisdiction. General jurisdiction, HL (USA) asserts, requires continuous and systematic activities within the state, not just injection of products into the stream of commerce.

Profile filed a sur-reply in which it claims that HL (USA)'s allegations that the subject stem was not sold or distributed by HL (USA) are conclusory and, further, are contradicted by Profile's own evidence. Profile insists that HL (USA) delivered the stem into the stream of commerce with the expectation that it would be purchased or used by consumers in Texas. On this basis, Profile asserts, it has established a *prima facie* case that specific jurisdiction exists. Profile claims that it has also shown a *prima facie* case of general jurisdiction because it demonstrated that HL (USA) has continuing and systematic contacts with Texas through the sale and distribution of HL's own branded stems.

At a July hearing, the Court granted the parties additional time to conduct discovery on the issue of personal jurisdiction over HL (USA). As of this time, the parties have not submitted additional filings on the personal jurisdiction question.

***i. Specific Jurisdiction***

As support for specific jurisdiction, Profile states that HL (USA) sold the stem that is the basis of this lawsuit, and a representative of HL (USA) traveled to Texas to investigate the lawsuit. The Court notes that this happened after the lawsuit had already been filed. Beyond an affidavit by its own corporate representative, however, Profile has not presented evidence that HL (USA) sold the stem at issue in the case. The Court must "accept as true [Profile's] uncontroverted allegations," but only "so long as the allegations are not merely conclusory." *Cent. Freight Lines, Inc.*, 322 F.3d at 380. *See also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (determining that "the district court correctly held that the prima-facie-case requirement does not require the court to credit conclusory allegations"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("'In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.'" (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994))). Profile bases its argument upon conclusory allegations that are disputed by HL (USA). Without any evidence for its claims beyond an affidavit by its own employee, Profile has failed to make a *prima facie* case that this Court has personal jurisdiction over HL (USA).

Even if the Court were to assume, as Profile claims, that HL (USA) sold the stem at issue, this does not establish a *prima facie* case of specific jurisdiction. HL (USA) claims that any

transaction concerning the stem would have occurred in California, and Profile has not disputed this fact. Instead, Profile states that "[w]hen the contact stems from a product sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the product into the steam of commerce with the expectation that it would be purchased by consumers in the forum state." (Resp. at 5-6.) Therefore Profile's argument essentially rests on the assumption that specific jurisdiction may arise because HL (USA) introduced its product into the stream of commerce.

HL (USA)'s sale of a bicycle stem in California simply does not rise to the level of actions purposefully directed at Texas. Profile has not given the Court reason to believe that HL (USA), by selling a product in its own state, could have expected it would be haled into a court in the state of Texas. The sale resembles a "random, fortuitous, or attenuated contact[]" rather than purposeful availment. *Choice Healthcare, Inc.*, 615 F.3d at 369. At best, Profile has shown that HL (USA) sells products that are distributed throughout the country, including in Texas. Yet it has not presented evidence suggesting that HL (USA) has a regular course of sales in Texas, or advertising, advice, marketing, or designs targeted toward Texas. Nor is there evidence that HL (USA) made a specific effort to sell items in Texas. As in *McIntyre Machinery*, then, Profile has failed to show that HL (USA) purposefully availed itself of the privilege of conducting activities within Texas, or delivered its goods into the stream of commerce with the intention that they would be purchased by Texas users.

Profile rests its argument on conclusory allegations that the Court will not accept as true. Even if true, however, these conclusory facts would be insufficient to create a *prima facie* case of personal jurisdiction over HL (USA).

***ii. General Jurisdiction***

The Court must next consider whether Profile has presented facts sufficient to support a *prima facie* case of general jurisdiction. Profile insists that there is general jurisdiction because HL (USA) distributes the "ZOOM" product line throughout the United States, including in Texas. Those products are sold on the internet and to retailers such as Wal-Mart and Amazon.com.

Profile claims that HL (USA) is the sole distributor of "ZOOM" products. Therefore, Profile states, HL (USA) has had continuing and systematic contacts with the forum state. Yet again, however, Profile's only support that HL (USA) is the sole distributor of the "ZOOM" product line in the United States is an affidavit by its own corporate representative. Although granted time for additional discovery, Profile has not presented the Court with further evidence that the "ZOOM" product line is exclusively distributed by HL (USA). With nothing more than conclusory allegations to support its arguments, Profile has failed to make a *prima facie* case that the Court has general jurisdiction over HL (USA).

Even if it were to take Profile's allegations as true, the Court finds that distribution of the "ZOOM" product line throughout the United States, without more, is not enough to support a *prima facie* case of general jurisdiction. The Fifth Circuit has expressly discredited Profile's theory, stating that "[i]njecting a product, even in substantial volume, into a forum's 'stream of commerce,' without more, does not support general jurisdiction. Advertising and marketing through national media is insufficient, as are isolated visits to the forum." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). Indeed, even "[t]he sale of products to customers in the forum state, unless it amounts to a substantial portion of an entity's business, is an insufficient basis for general jurisdiction." *Gemstar Group USA, Inc. v. Ferragamo USA, Inc.*, No. H-08-1822, 2008 WL 4858363, at *4 (S.D. Tex. Nov. 10, 2008) (citing *Cent. Freight Lines,*

*Inc.*, 322 F.3d at 376 (finding contacts not substantial enough to support general jurisdiction where business never registered to do business in forum state, never maintained office or records, and never paid franchise taxes, despite other activities in forum state, including interline shipments to and from Texas and business development by employees sent to the forum state)).

Profile has not presented any evidence that HL (USA) has specifically sold its products to consumers in Texas, let alone evidence suggesting that HL (USA) conducts a substantial portion of its business in Texas or otherwise has extensive contacts with Texas. As in *Goodyear Dunlop Tires Operations, S.A.*, Profile has not offered evidence that HL (USA) designs, manufactures, or advertises its products in Texas, has a place of business, employees, registration, or bank accounts in Texas, or solicits business or itself sells or ships products to customers in Texas. Even if the Court were to accept Profile's conclusory allegations as true, then, they are insufficient to create a *prima facie* case that this Court has general jurisdiction over HL (USA).

## IV. CONCLUSION

Profile has been unable to present facts making a *prima facie* case that this Court has either specific or general jurisdiction over HL (USA). The Court therefore determines, based on the foregoing, that Profile has not presented facts sufficient to make a *prima facie* case that the Court has personal jurisdiction over HL (USA). The Court hereby **DENIES** Powell's Motion to Dismiss (Doc. No. 44) and **GRANTS** HL (USA)'s Motion to Dismiss (Doc. No. 68).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th day of October, 2011.

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**